**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**JAMES M. JONES,**

      **Plaintiff,**

**vs.**                                **Case No. 1:12cv88-MP/CAS**

**CAROLYN W. COLVIN,**[1]
**Acting Commissioner of Social Security,**

      **Defendant.**

_____/


**<u>REPORT AND RECOMMENDATION</u>**

      This is a Social Security case referred to the undersigned United States Magistrate

Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule

72.2(D). It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final

determination of the Commissioner of the Social Security Administration (SSA) denying

Plaintiff's application for Disability Insurance Benefits (DIB). After careful consideration

of the entire Record, it is recommended that the decision of the Commissioner be

affirmed.

---

      [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this case.

### I.  Procedural status of the case

On November 10, 2009, Plaintiff, James M. Jones, filed a Title II application for applied for a period of disability and disability insurance benefits (DIB) alleging disability beginning February 10, 2008.   R. 12, 105-11.   (Citations to the Record shall be by the symbol R. followed by a page number that appears in the lower right corner.)   Plaintiff's last date of insured status for disability benefits is December 31, 2008.   R. 12.

Plaintiff's claim was denied initially on March 2, 2010, R. 60, and on reconsideration on May 14, 2010.   R. 64-66.   On May 27, 2010, Plaintiff requested a hearing.   R. 12, 70-72.   On October 19, 2010, the evidentiary hearing was held in Ocala, Florida.   R. 12, 29-56.   Plaintiff was represented by Pamela Dunmore, a non-attorney representative.   R. 12, 30, 67.   Plaintiff and his wife testified.   R. 2-20.   Richard J. Hickey testified as a vocational expert (VE).   R. 12, 30, 50-54.

On October 29, 2010, the Administrative Law Judge (ALJ) Robert D. Marcinkowski entered his Decision concluding that Plaintiff is not disabled.   R. 23.   On December 31, 2010, Plaintiff sought review of the ALJ's Decision with the Appeals Council and submitted a brief and a September 23, 2011, psychiatric evaluation by Gale Greeley, M.D.   R. 6-7, 216-17, 575-86.   On March 10, 2012, the Appeals Council denied Plaintiff's request for review, but noted that it had considered the evidence provided and records from Meridian Behavioral HealthCare dated April 26 through September 23, 2011, noting that "the latter information is about a later time" and "does not affect the decision about whether [Plaintiff] was disabled at the time [Plaintiff was] last insured [December 31, 2008] for disability benefits."   R. 1-2.   On March 5, 2012, Plaintiff filed a

complaint and seeks judicial review of the decision.   Doc. 1.   Both parties filed

memoranda of law, which have been considered.   Docs. 14 and 15.   After careful

consideration of the entire Record, it is recommended that the decision of the

Commissioner be affirmed.

## II.   Legal standards guiding judicial review

This Court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.

42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).   "Substantial

evidence is more than a scintilla, but less than a preponderance.   It is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion."

Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).   "The Commissioner's factual

findings are conclusive if supported by substantial evidence."   Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[2]

"In making an initial determination of disability, the examiner must consider four

---

[2]   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."   Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).   "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.   A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."   Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).   "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"   Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'"   Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C. § 423(d)(2)(A).   A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).   In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status.   *See* 42 U.S.C. § 423(a)(1)(A) and (d); Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.   20 C.F.R. § 404.1520(a)(4)(i)-(v):

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.   Does the individual have any impairments which prevent past relevant work?

5.   Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.   A positive finding at step three results in approval of the application for benefits.   At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.   Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.   If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).   If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert.   Phillips, 357 F.3d at 1239-40.   "In order for a vocational expert's testimony to constitute substantial evidence,

the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." <u>Wilson v. Barnhart</u>, 282 F.3d at 1227. *See also* <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985). However, the ALJ is not required to include findings in the hypothetical that the ALJ has properly rejected as unsupported. *See* <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158 (11th Cir. 2004); <u>McSwain v. Bowen</u>, 814 F.2d 617, 620 n.2 (11th Cir. 1987).

## III. Findings of the ALJ

In his Decision, the ALJ made several findings relative to the issues raised in this appeal:

1. Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2008." R. 14.

2. Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of February 10, 1998 through his date last insured of December 31, 2008." *Id.*

3. "Through the date last insured, [Plaintiff] had the following severe impairments: (1) history of alcohol dependency, and (2) Schizo-affective disorder." *Id.*

4. "Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.*

5. "[T]hrough the date last insured, [Plaintiff] had the residual functional capacity [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: The [Plaintiff] can perform simple, routine tasks, and have occasional interaction with others." R. 16.

6. "Through the date last insured, [Plaintiff] was unable to perform any past relevant work." R. 20.

7. Plaintiff "was born on March 5, 1969, and was 39 years old, which is defined as a younger individual age 18-44, on the date last insured." *Id.*

8. Plaintiff "has a limited education and is able to communicate in English." *Id.*

9. "Through the date last insured, considering the [Plaintiff's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed" such as "hand packer," laundry laborer," bench assembler, and machine operator in the garment industry," which are unskilled work, with a SVP of 2, with the first two jobs at medium and the latter two jobs at light.   R. 20-21.

10. Plaintiff was not under a disability at any time from February 10, 2008, the alleged onset date, through December 31, 2008, the date last insured.   R. 21.

## IV.  Issue

Plaintiff argues that the hypothetical question posed by the ALJ to the VE was incomplete because it did not account for Plaintiff's marked limitations in social functioning and moderate limitations in concentration, persistence, and pace.   Doc. 15 at 4-10.

## V.  The ALJ's Consideration of the Medical and Other Evidence

Plaintiff does not disagree with the factual findings derived from the medical and other evidence submitted to the ALJ during the evidentiary hearing.   *See* Doc. 14.   In his memorandum, Plaintiff refers to four pages in the Record.   Doc. 14 at 4-5.   These include November 12, 2008, and June 31, 2009, notes from W.J. Richey & Associates, P.A., (W.J. Richey), R. 220, 222; a July 14, 2010, note from Meridian Behavioral Healthcare, Inc. (Meridian), R. 485; and a November 14, 2010, note from Meridian, R. 292, 400, 444.   The ALJ refers to Plaintiff's treatment at W.J. Richey and Meridian in his Decision, although not specifically to the pages cited by Plaintiff.   R. 18-19.   The reference to the November 14, 2010, note should be January 14, 2010, R. 292, 400, 444, because Plaintiff was admitted to Meridian on January 14, 2010, and discharged on January 16, 2010.   R. 293.   At discharge, Plaintiff's GAF score was 50 rising from 30

when admitted on January 14th.   R. 293, 444; *see* R. 222 and n.3 (GAF score of 50 on

November 12, 2008).   All the notes except the November note post-date Plaintiff's last

date insured, December 31, 2008.   R. 12.[3]

    Rather, Plaintiff disagrees with the weight given to the evidence and the

conclusions reached by the ALJ regarding whether Plaintiff can perform the jobs

described by the VE and found by the ALJ in light of the alleged deficient hypothetical

question posed to the VE, which, according to Plaintiff, omitted critical impairment

factors.

    Plaintiff's testimony at the hearing is summarized by the ALJ on pages 16 and 17

of his Decision.   R. 16-17.   Medical and other evidence presented to the ALJ is set

forth in the ALJ's Decision at pages 15 through approximately the first part of page 20.

R. 15-20.

    After determining that Plaintiff has not engaged in substantial gainful activity

since February 10, 2008, and that Plaintiff has two severe impairments--history of

---

[3]   The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000) states that the GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure."   DSM-IV-TR 30-32.   Neither Social Security regulations nor case law require an ALJ to determine the extent of an individual's mental impairment based solely on a GAF scale ratings.   The Commissioner has declined to endorse the GAF scale ratings for "use in the Social Security and SSI disability programs," and has indicated that GAF scale ratings have no "direct correlation to the severity requirements of the mental disorders listings."   65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000). A GAF score of 41 to 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.   DSM-IV-TR at 34.   A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.   *Id.*

alcohol dependency and Schizo-affective disorder--the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.   R. 14.   The ALJ analyzed this issue in light of Listings 12.03 (schizophrenic, paranoid, and other psychotic disorders), 12.04 (affective disorders), and 12.09 (substance addiction disorder).   The ALJ considered the information set forth in Plaintiff's "Function Report," Exhibit 4E, that was filled-out by Plaintiff's wife. R. 15-16, 141-48.

Listing 12.03 is "[c]haracterized by the onset of psychotic features with deterioration from a previous level of functioning."   "The required level of severity for these disorders is met when the requirements in both [paragraphs] A and B are satisfied, or when the requirements of [paragraph] C are satisfied."   20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.03.   At least two of the four listed criteria must be satisfied: marked restriction of activities of daily living, marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.   *Id.*

Listing 12.04 is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.   Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.   The required level of severity for these disorders is met when the requirements in both [paragraphs] A and B are satisfied, or when [paragraph] C are satisfied."   20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04.   At least two of the four listed criteria must be satisfied: marked restriction of activities of daily living, marked difficulties in maintaining

social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.*

Listing 12.09 refers to "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.09. "The required level of severity for these disorders is met when the requirements in any of the [listed health issues, A.-I.,] are satisfied." *Id.*

After discussing the facts set forth in the "Function Report," the ALJ found that Plaintiff had *mild* restriction of daily living; *marked* difficulties in social functioning; and *moderate* difficulties in concentration, persistence, or pace; and *no* episodes of decompensation, which have been of an extended duration. Therefore, the ALJ found that the paragraph B criteria were not met. R. 15. Based on his review of the medical record, the ALJ also found that Plaintiff's mental impairment did not satisfy the paragraph C criteria of the mental listing. R. 15-16.

Nevertheless, the ALJ stated that the paragraph B criteria are not a RFC

assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders in 12.00 of the Listing of Impairments (SSR 96-8p).

R. 16. Therefore, the ALJ stated that his RFC "assessment reflects the degree of limitation [he] has found in the 'paragraph B' mental function analysis." R. 16.

In light of this framework, the ALJ made findings regarding Plaintiff's RFC following a two-step process: whether there is an underlying medically determinable

physical or mental impairment(s) that could reasonably be expected to produce the

Plaintiff's pain or other symptoms and, if so, whether the intensity, persistence, and

limiting effects of Plaintiff's symptoms limit Plaintiff's functioning.   At this point, the ALJ

discussed the relevant medical and other evidence presented and concluded:

> Overall, the undersigned finds the claimant's testimony and subjective statements regarding his pain and limitations credible to the extent of establishing that he has a combination of severe impairments, but not fully credible to the extent of establishing that these impairments are so severe as to preclude him from performing substantial gainful activity as required under Social Security rules and regulations.
>
> The claimant's medical history is unremarkable for substantiating medical impairments of such a severity to be of disabling proportions.   He appears to be stable and functioning well when participating in counseling, a prescribed medication regimen and when refraining from alcohol and cannabis abuse.   The claimant testified that he participated in an alcohol treatment program and has been cured of alcohol dependence.   His last drink was four months ago. (Hearing Testimony).   Two state agency consultants have opined that there is insufficient evidence prior to the claimant's date last insured to opine on the claimant's mental condition.   (Exhibits 4F, 7F).   Accordingly, the undersigned finds the claimant's stated symptoms inconsistent over that which would be expected based on the medical findings in the record (SSR 96-7p), including the observations of the consultative examiners.
>
> The above residual functional capacity has been assigned giving the claimant the benefit of doubt.

R. 19-20.[4]

The ALJ rendered the following RFC for Plaintiff:

5.   After careful consideration of the entire record, the undersigned finds that

---

[4]   As part of his RFC evaluation, the ALJ considered the March 10, 2010, opinion of State agency consultant, Laurianne Sandrik, Psy. D.   R. 19.   The ALJ assigned some weight to Dr. Sandrik's opinion, but found that Plaintiff "more appropriately has *marked* difficulties in maintaining social functioning and *moderate* difficulties in maintaining concentration, persistence or pace," whereas Dr. Sandrik opined that Plaintiff had *moderate* difficulties in maintaining social functioning.   *Id.*   (emphasis added).

through the last date insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels hut with the following nonexertional limitations: The claimant can perform simple, routine tasks, and have occasional interaction with others.

R. 16.

At step 4, and based on the testimony of Mr. Hickey, the VE, regarding Plaintiff's *past relevant work* as a heavy equipment operator, and his response to the first hypothetical question posed by the ALJ, R. 51-52, the ALJ agreed with Mr. Hickey that Plaintiff "is unable to perform the [Plaintiff's] past relevant work."   R. 20.

At step 5, the ALJ determined that Plaintiff's "ability to perform work at all exertional levels was compromised by nonexertional limitations.   To determine the extent to which these limitations eroded the occupational base of unskilled work at all exertional levels," R. 21, the ALJ asked Mr. Hickey a series of hypothetical questions to assist in determining whether there are jobs in the national economy that Plaintiff can perform.   R. 21, 52-53.

Q Okay. Let me give you a hypothetical question.   Please assume that you're dealing with an individual the same age as the claimant, 41 years old; same educational background, limited; and past work experience as you identified. Further assume that this individual, according to the record, has no physical limitations, however, the individual I'm describing can only perform simple routine tasks.   So would that individual that I described be able to do any of the claimant's past relevant work as performed or as generally performed in the national economy?

A No, sir, he could not perform his past work.

Q Would there be any other jobs that, that individual could do in the national economy given those limitations?

A There are light jobs, Your Honor, that he could perform.

Q I guess light and medium jobs too, right?

A As well as medium jobs, yes.

Q Okay. All right. Would you identify some, please, for me?

A There are medium jobs such as where there are hand packagers or packers, medium, SVP: 2, <u>DOT</u> code number 920.587-018.   As I said, it's medium and unskilled.   In Florida, 2,000 approximately.   Nationally upwards of 25,000. By the same token, there are medium laundry laborers. They work in laundries. <u>DOT</u> code number 361.687-018.   Folding laundry mostly.   Medium, 5VP: 2.   I mean when you consider major laundries Florida has some 8,000 approximately.   Nationally, 80,000 approximately.

Q Okay. Can you identify some light jobs?

A There are bench assemblers, I mean they can sit or stand at the bench and assemble anything from electronics to carburetors, as a as an example, within industries. Light, 5VP: 2, <u>DOT</u> code number 706.684-022.   Florida, 1,000 approximately, 1,000 to 1,100.   Nationally, 80,000 approximately.   There are different kind of machine operators in the garment industry, sewing machine operators. I mean they're light using industrial sewing machlnes, light, unskilled, <u>DOT</u> code number 786.685-030.   They're mostly, as I say, in the mills which tend to be Georgia primarily but Florida has some 350 to 400 approximately.   Nationally 8,000 to 9,000 approximately.

Q Okay.   I'm going to add one limitation, one other additional limitation that the individual I'm describing have, have only occasional interaction with others.   So would that individual be able to do the jobs as a hand packagers, or hand packer, or laundry laborer, bench assembler, and machine operator?

A It would not change my testimony, Your Honor, I mean --

Q So the individual would be able to do those jobs?

A I mean you're working individually.   There's not, I mean there, there are employees in the area but your interaction with them would not have be on a, would only be occasionally.

Q Okay. And are there any conflicts between the occupational evidence you have provided and the information contained in the <u>Dictionary of Occupational Titles</u> or its companion publication the <u>Selected Characteristics of Occupations</u>?

A No, sir, I, I utilized the Dictionary of Occupation Titles and supplements, yes.

R. 52-53; *see* R. 21.   At this point, Plaintiff's representative, asked the following

hypothetical questions.

Q Mr. Hickey, if we had added to the hypothetical a person who would have a marked inability in maintaining social functioning.   And I'm defining marked as three to five days per week there would be an anger outburst or a confrontation with either supervisors, co-workers, or the public. Would that change --

A So your definition of a social functioning is in respect to anger outbursts, is that, is that correct?

Q Correct.

A And what was the frequency, I'm sorry?

Q Three to five days per week.

A Well, with this being full time employment I mean anger outbursts I don't know, I mean what the, I guess I would have to, we would have to get into a little bit of specifics as to what the outbursts would entail.   I mean whether it would be a actual physical altercation or whether they --

Q A threat, you threaten to kill someone.

A And the outbursts would be of such a nature that, that it would be heard throughout the work area, is that, is that correct?

Q Yes.

A I would think that, that would be hard to maintain employment with any jobs.   I mean at some point that's, the employer is going to take some action.

ATTY: Nothing additional, Your Honor.

The ALJ then inquired of Plaintiff's counsel:

ALJ: Okay.   Your theory of disability, Ms. Dunmore?

[ATTY]: as you referred to, Your Honor, which is during the relevant time period and it is prior to the date last insured, as we stated earlier, Your Honor.   Your

Honor, we believe, it's important to note that there was an Axis 1, alcohol dependency --

ALJ: Okay.   Your theory of disability, okay.

ATTY: Theory of --

ALJ: -- I know what --

ATTY: -- disability --

ALJ: -- I know what the file says.

ATTY:   Yes, sir.   Theory of disability, Your Honor, is the claimant has a less than sedentary mental [RFC].   Your Honor, where as the Administration has noted a moderate inability in difficulties in maintaining social functioning, that's found in Exhibit 4F, we believe the record supports a marked difficulty in maintaining social functioning, Your Honor --

ALJ: Okay.

ATTY: -- due to the antisocial personality and the schizoid affective disorder. That's Exhibit 4F, page 11, Your Honor.

ALJ: Okay, thank you.   Thank you for coming Ms. Dunmore --

R. 54-55.

The ALJ determined based on the "credible testimony of the [VE]," that Plaintiff

"was capable of making a successful adjustment to other work that existed in significant

numbers in the national economy": hand packer, laundry laborer, bench assembler, and

machine operator in the garment industry, all unskilled work with a SVP of 2, with the first

two jobs rated as medium and the latter two jobs as light.   R. 21.

## VI.  Legal analysis

Plaintiff argues that the ALJ erred in determining his mental RFC.   Specifically,

Plaintiff contends that the ALJ failed to consider his impairments in combination,

including *marked* limitations in maintaining social functioning and *moderate* limitations in maintaining concentration, persistence, and pace, in his RFC finding and failed to include these impairments in a hypothetical questions posed to Mr. Hickey based on that finding.   Doc. 14 at 4-10.

Defendant argues that the ALJ's RFC determination of Plaintiff and the hypothetical questions posed to Mr. Hickey were consistent with the record and demonstrated that Plaintiff could perform the unskilled jobs.   Defendant also argues that the ALJ's mental RFC was sufficient because it accounted for all of Plaintiff's credibly-established limitations.   Doc. 15 at 7-10.

First, the ALJ accounted for Plaintiff's limitations in social functioning by including in his hypothetical question to the VE that the individual (Plaintiff) could "have only occasional interaction with others."   R. 53.

The ALJ provided a detailed summary of Plaintiff's hearing testimony.   Plaintiff testified, in part, that he had worked at Kohl's for two months in 2008, but was let go because he was told he threatened to hurt the boss, as a voice named "Buck" was telling him to hurt people.   R. 17, 37.   At or around the same time, as found by the ALJ, Plaintiff "testified that he was not getting along with other people.   He was scared of working around people.   [He] was very stressed and depressed" and had an "alcohol dependence, drinking 12 packs of beer every day, but he said that he no longer has those desires, as he started a program, getting a vivotrol shot in the buttock's once a month for 12 months, which [he] said cured him.   His last drink was four months ago." R. 17, 39-43.

The ALJ also reviewed the medical evidence, including Plaintiff's treatment by Creative Counseling Services of Gainesville, Inc., from November 3, 2008, through May 8, 2009, with Plaintiff completing their battery intervention program on May 8, 2009. Treatment notes reflect that Plaintiff made good progress and was accountable for his behavior.   Alcohol treatment was recommended.   R. 18.

From November 12, 2008, through February 24, 2009, Plaintiff was treated by W.J. Richey for alcohol dependency, schizoaffective disorder, and antisocial personality disorder, bipolar type.   R. 18, 222.

Plaintiff was also treated at Meridian from June 6, 2009, through January 16, 2010, R. 286-522, with an initial diagnosis of alcohol dependence, and major depressive disorder.   R. 19, 294-98, 508-12.   He was treated with therapy and medication.   On January 15, 2010, Plaintiff was diagnosed with depression NOS, alcohol dependence, and hypertension.   R. 19, 293.

After reviewing the medical evidence and the reports from a State agency consultant, Dr. Sandrik, the ALJ determined that Plaintiff "appears to be stable and functioning well when participating in counseling, a prescribed medication regimen and when refraining from alcohol and cannabis use."   R. 19.   (State agency consultant, Donald Mortford, M.D., stated on April 26, 2010, that there are insufficient medical records to provide physical input as of the date last insured.   R. 271.   State agency consultant, Lee Reback, Psy. D., regarding a Psychiatric Review Technique form, stated on May 12, 2010, that there is insufficient clinical information upon which to make a determination given Plaintiff's date last insured.   R. 19, 272, 284.)   The ALJ

reiterated that Plaintiff "testified that he participated in an alcohol treatment program and has been cured of alcohol dependence." R. 19. The ALJ came to these conclusions notwithstanding his determination that Plaintiff had marked difficulties in maintaining social functioning. R. 19. Also, the ALJ gave Plaintiff "the benefit of doubt" when determining Plaintiff's RFC. R. 20. Based on this Record, substantial evidence supports the ALJ's limitation in Plaintiff's social functioning by including in his hypothetical question to the VE that the individual (Plaintiff) could "have only occasional interaction with others." R. 53.[5]

Second, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments. R. 14. In making this determination, the ALJ stated in part: "With regard to concentration, persistence or pace, the claimant had moderate difficulties. The claimant can pay attention for a few seconds. He does not finish what he starts. He follows written instructions poorly and is okay at following spoken instructions, but he needs constant reminding. (Exhibit 4E)." R. 15. The ALJ acknowledged that the identified limitations are not a RFC assessment, "but are used to rate the severity of mental impairments at steps 2 and 3." R. 16. As noted above, the ALJ discussed the

---

[5] The jobs identified by the VE and the ALJ appear to accommodate Plaintiff's limitations in social functioning. According the <u>Dictionary of Occupational Titles</u> (DOT) (4th ed., Rev. 1991), for the most part, the following jobs do not appear to require much interaction: *laundry laborer*-DOT # 361-687-018*; hand packager*-DOT # 920.587-018; *bench assembler*-DOT # 706.684-022; and *machine operator*-DOT # 786.685-030. (The bench assembler job description notes, however, that a person "[f]requently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker" and "[m]ay be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor.") Even if the bench assembler job is deleted, there are other jobs listed that Plaintiff can perform.

evidence in the Record and Plaintiff does not suggest that he overlooked any relevant

evidence when he determined Plaintiff's RFC, which included nonexertional limitations

such as, that Plaintiff "can perform simple, routine tasks, and have occasional

interaction with others."   R. 16.

It appears that the ALJ's attention to detail, including but not limited to Plaintiff's

hearing testimony, led him to find that Plaintiff had moderate rather than mild difficulties

in concentration, persistence, or pace as found by Dr. Sandrik.[6]   R. 19.   Regarding

Plaintiff's description of his daily activities, the ALJ found it "difficult to attribute that

degree of limitation to the claimant's medical condition, as opposed to other reasons, in

view of the relatively limited medical evidence and other factors discussed in this

decision."   R. 17-18.   Based on the foregoing, it is not surprising that the ALJ

described Plaintiff (the hypothetical person) as only able to perform "simple routine

tasks" that implicitly pertained to the issue of moderate difficulties in concentration,

persistence, or pace.   R. 52.[7]

In <u>Winschel v. Astrue</u>, 631 F.3d 1176 (11th Cir. 2011), a case cited by Plaintiff,

the Eleventh Circuit held that the ALJ erred with respect to that case because the ALJ

did not include in the hypothetical question to the VE that the claimant had moderate

_____

[6]   The ALJ noted that "[r]egarding the claimant's functional capacities, the claimant testified that his ability to concentrate was not very good at all."   R. 17.

[7]   After the ALJ completed his colloquy with the VE, Plaintiff's representative asked the VE to assume that the hypothetical person had marked inability in social functioning, such that three or five days a week there would be an anger outburst or confrontation with supervisors, co-workers, or the public.   R. 53-54.   The VE opined that it would be hard for such a person to maintain employment with any jobs.   R. 54.   No additional facts were provided regarding concentration, persistence, or pace.   R. 54.

limitation in concentration, persistence, or pace, as found by the ALJ at step two of the

sequential process.   *Id.* at 1181.   The Eleventh Circuit ruled in this manner not

because the ALJ's two-step moderate limitation in concentration, persistence, or pace

finding must always be included in the RFC or hypothetical question based on that

RFC, as suggested by Plaintiff.   Doc. 11 at 14.   Instead, the Eleventh Circuit reached

its conclusion in <u>Winschel</u> because the ALJ failed to adequately explain how the

medical evidence showed that the claimant could still perform the mental tasks of work

despite his moderate limitation in concentration, persistence, or pace.   <u>Winschel</u>, 631

F.3d at 1181.   "But the ALJ did not indicate that medical evidence suggested

Winschel's ability to work was unaffected by this limitation, nor did he otherwise

*implicitly* account for the limitation in the hypothetical.   Consequently, the ALJ should

have explicitly included the limitation in his hypothetical question" to the VE.   *Id.*

(emphasis added).[8]

Here, the ALJ expressly found that Plaintiff's "statements concerning the

intensity, persistence and limiting effects of these symptoms are not credible."   R. 17.

Further, the ALJ at least implicitly determined that the medical evidence did not support

Plaintiff's claimed limitations regarding concentration, persistence, or pace to the extent

they precluded Plaintiff from performing one or more of the jobs described in step five.

_____

[8]   "Other circuits have also rejected the argument that an ALJ generally accounts
for a claimant's limitations in concentration, persistence, and pace by restricting the
hypothetical question to simple, routine tasks or unskilled work. . . .   But when medical
evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled
work despite limitations in concentration, persistence, and pace, courts have concluded
that limiting the hypothetical to include only unskilled work sufficiently accounts for such
limitations."   <u>Winschel</u>, 631 F.3d at 1180 (citations omitted).

R. 20-21.  The ALJ also specifically found Plaintiff "can perform simple, routine tasks."

R. 16.

Plaintiff carried his burden to prove that he could not perform prior relevant work

and the ALJ so found.   The burden then shifted, and the Commissioner was required at

step five to establish that despite Plaintiff's impairments, Plaintiff is able to perform

other work in the national economy in light of Plaintiff's RFC, age, education, and work

experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.

1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir.

1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).   If the Commissioner carries this

burden, the claimant then must prove that he or she cannot perform the work suggested

by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).   Here,

substantial evidence supports the ALJ's, and necessarily the Commissioner's

determination, that Plaintiff could perform one or more jobs in the national economy.

In particular, the hypothetical question posed to Mr. Hickey was consistent with

the ALJ's findings based on the medical, other evidence of record, and the ALJ's

credibility findings.   See Smith v. Comm'r of Soc. Sec., 486 F. App'x 874, 876 (11th Cir.

2012).   Plaintiff has not demonstrated that the ALJ erred in posing the hypothetical

questions to Mr. Hickey.

The vocational expert is a specialist in employment and vocational factors

influencing employment.   See Phillips, 357 F.3d at 1240.   "Because the hypothetical

was adequate, the vocational expert's testimony was reliable to establish that there are

jobs that [Plaintiff] can perform that exist in significant numbers within the regional and

national economies."   Gragg v. Astrue, 615 F.3d 932, 941 (8th Cir. 2010).

The ALJ did not err in determining that Plaintiff would be able to perform several unskilled jobs.   R. 21.   As a result, the ALJ did not err in determining that Plaintiff retained the ability to perform other work and was, therefore, not under a disability as defined in the Social Security Act.   The ALJ's decision is supported by substantial evidence and he appropriately applied controlling law.

## VII.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.   Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits should be **AFFIRMED.**

**IN CHAMBERS** at Tallahassee, Florida, on February 25, 2013.


**s/   Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.   A party may respond to another party's objections within 14 days after being served with a copy thereof.   Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**